UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
STATE OF NEW YORK, THE PEOPLE OF   :
THE STATE OF CALIFORNIA, EX REL.   :
ATTORNEY GENERAL BILL LOCKYER      :
CALIFORNIA ENERGY COMMISSION,      :
STATE OF CONNECTICUT, STATE OF     :
ILLINOIS, STATE OF IOWA, STATE OF  :
MAINE, COMMONWEALTH OF             :
MASSACHUSETTS, STATE OF NEW        :
HAMPSHIRE, STATE OF NEW JERSEY,    :
STATE OF NEW MEXICO, EX REL.       :
ATTORNEY GENERAL PATRICIA A.       :
MADRID, STATE OF NORTH CAROLINA,   :
COMMONWEALTH OF PENNSYLVANIA,      :
DEPARTMENT OF ENVIRONMENTAL        :
PROTECTION, STATE OF RHODE ISLAND, :
STATE OF VERMONT, STATE OF         :
WISCONSIN, and CITY OF NEW YORK,   :
                                   :
                Plaintiffs,        :
                                   :
          -against-                :
                                   :
SAMUEL W. BODMAN, AS SECRETARY     :   Consolidated Civil Actions
OF THE UNITED STATES DEPARTMENT    :   05 Civ. 7807 (JES) and
OF ENERGY, and UNITED STATES       :   05 Civ. 7808 (JES)
DEPARTMENT OF ENERGY,              :
                                   :   **MEMORANDUM OPINION
                Defendants.        :        AND ORDER**
-----------------------------------X
NATURAL RESOURCES DEFENSE          :
COUNCIL, INC., MASSACHUSETTS       :
UNION OF PUBLIC HOUSING TENANTS,   :
and TEXAS RATEPAYERS'              :
ORGANIZATION TO SAVE ENERGY,       :
                                   :
                Plaintiffs,        :
                                   :
          -against-                :
                                   :
SAMUEL W. BODMAN, AS SECRETARY     :
OF THE UNITED STATES DEPARTMENT    :
OF ENERGY, and UNITED STATES       :
DEPARTMENT OF ENERGY,              :
                                   :
                Defendants.        :
-----------------------------------X

**SPRIZZO, D.J.:**

Defendants, the United States Department of Energy and its Secretary, Samuel W. Bodman (collectively the "DOE" or the "Government"), submit this motion for an order modifying the November 7, 2006 Consent Decree (the "Motion") that the Government entered into with Plaintiffs, the State of New York, et al. The Motion seeks a nine-month extension of the final rule setting efficiency standards for certain furnaces and boilers in order to permit the Government to issue a Supplemental Notice of Proposed Rulemaking ("SNOPR") prior to making a final rule. The Plaintiffs in this action submit that the DOE has not established the requisite "good cause" for modifying the Consent Decree, but would be willing to stipulate to the DOE's proposed extension, provided that certain conditions are met.[1] The Gas Appliance Manufacturers' Association ("GAMA"), the Air-Conditioning and Refrigeration Institute ("ACRI"), and the Association of Home Appliance Manufacturers ("AHAM") have opposed it. The joint requests of the Government and GAMA for oral argument is denied, and for the reasons that follow, the Government's Motion is DENIED.

---

[1] Those conditions are as follows: (1) granting the extension shall not serve as a precedent for the granting of any other requested extensions; (2) the DOE will publish the SNOPR described in the Motion no later than September 30, 2007; (3) the SNOPR proposes an effective date for the final rule that is no later than January 1, 2015; and (4) the SNOPR addresses the three topics that the DOE states in the Motion merit further consideration by the Agency. See Pls.' Response to the DOE's Mot. for Modification of Consent Decree, at 2.

## I.  BACKGROUND

A)  <u>Factual Background and Procedural History</u>

In 1975, Congress enacted the Energy Policy and Conservation Act ("EPCA") in order "to conserve energy supplies" and "to provide for improved energy efficiency of . . . major appliances . . . ."  42 U.S.C. § 6201(4)-(5).  In addition, the EPCA's appliance efficiency provisions have the goal "of steadily increasing the energy efficiency of covered products."  <u>NRDC v. Abraham</u>, 355 F.3d 179, 197 (2d Cir. 2004).  Thus, the EPCA requires that certain residential and commercial equipment meet minimum energy efficiency standards that are established by Congress in the statute or prescribed by the DOE pursuant to the statute.  <u>See, e.g.</u>, 42 U.S.C. §§ 6295, 6313 & 6317.  Because technology improves over time, the EPCA requires the DOE to issue periodic revisions, or updates, to existing standards.  In particular, the EPCA requires the DOE to undertake successive rulemakings concerning revised efficiency standards and sets express deadlines by which the DOE must issue final rules.

The Motion concerns the current September 30, 2007 deadline (the "Existing Deadline") for the DOE to publish a final rule establishing amended energy conservation standards for residential furnaces and boilers.[2]  The EPCA's original deadline

---

[2]  Given the pendency of the Motion, originally filed August 3, 2007, the Court issued an order staying the September 30, 2007 deadline for the DOE to promulgate a final rule in the Federal Register until seven calendar days after the date on which the Court rules on the Motion.  If the Court does not

for a final rule was January 1, 1994. See 42 U.S.C. § 6295(f)(3)(B). In May 2001, the DOE published a schedule indicating that it intended to publish the final rule in 2003 instead. See 66 Fed. Reg. 25,365, 25,369 (May 14, 2001). Seven months later, the DOE published a new schedule stating that it would complete the rule in 2004. See 66 Fed. Reg. 61,125, 61,160-61 (Dec. 3, 2001). In 2003, the DOE published a third schedule, moving the completion date to September 2005. See 68 Fed. Reg. 72,401, 72,467-68 (Dec. 22, 2003). In 2004, the DOE published a fourth schedule moving the completion date to September 2007, thirteen years after the EPCA's original deadline. See 69 Fed. Reg. 72,663, 72,712-13 (Dec. 13, 2004).

On September 7, 2005, Plaintiffs filed two EPCA citizen suits in this Court alleging that the DOE has failed to comply with the EPCA's deadlines for publishing final rules concerning energy efficiency standards for twenty-two categories of products, including furnaces and boilers. See Compl., dated Sept. 7, 2005 (05 Civ. 7807); Compl., dated Sept. 7, 2005 (05 Civ. 7808). The Court consolidated the two actions on December 6, 2005. See Order, dated Nov. 30, 2005 (05 Civ. 7807, 05 Civ. 7808). Subsequently, the AHAM was permitted to intervene as a Defendant-Intervenor, and the GAMA and the ACRI were permitted to

---

rule on the Motion on or before November 1, 2007, the DOE must issue a final rule within seven calendar days thereof, or seek further modification of the Consent Decree or other appropriate relief from the Court.

intervene as Plaintiffs-Intervenors. <u>See</u> Order, dated Dec. 16, 2005 (05 Civ. 7807, 05 Civ. 7808); Order, dated Dec. 27, 2005 (05 Civ. 7807, 05 Civ. 7808).

B) <u>The Consent Decree</u>

On November 7, 2006, this Court entered a Consent Decree resolving the complaints in this action. <u>See</u> Decl. of Pierre G. Armand, dated Aug. 3, 2007 ("Armand Decl."), Ex. A.  In the Consent Decree, the parties agreed that "it is in the best interests of the public, the parties and judicial economy to resolve these consolidated actions without further litigation" and that "the actions can be resolved by a binding schedule governing the completion of Energy Efficiency Rules, as set forth in this Consent Decree." <u>See</u> Consent Decree ¶ 19.  The Consent Decree set forth a schedule pursuant to which the DOE was required to publish final rules providing amended energy efficiency standards for the twenty-two categories of products. <u>Id</u>., § III, ¶ 1.  With respect to furnaces and boilers, the Consent Decree required the DOE to publish the final rule on or before September 30, 2007. <u>Id</u>.  The Consent Decree provided that it could "be modified by (a) written stipulation of the parties, or (b) the Court, pursuant to a motion by any party, for good cause shown . . . ." <u>Id</u>., § V, ¶ 1.

C) <u>The Final Rule Regarding Residential Furnaces and </u>
    <u>Boilers</u>

On July 29, 2004, the DOE published an Advanced Notice of

Proposed Rulemaking ("ANOPR") pertaining to energy conservation standards for residential furnaces and boilers. See 69 Fed. Reg. 45,420 (July 29, 2004). The ANOPR described the analyses that the DOE expected to perform and requested data for use in the rulemaking. Id.

On October 6, 2006, the DOE published a Notice of Proposed Rulemaking ("NOPR") that proposed amending the energy conservation standards for residential furnaces and boilers. See 71 Fed. Reg. 59,204 (Oct. 6, 2006). On October 30, 2006, the DOE held a public meeting for interested parties to provide comments and to discuss issues relevant to the NOPR. See Decl. of David E. Rodgers, dated Aug. 3, 2007 ("Rodgers Decl.") ¶ 13. On February 9, 2007, the DOE published a notice of data availability and reopening of the comment period in order to address questions posed by stakeholders at the public meeting and to provide an opportunity for the public to review and comment on the DOE's response to each question. See 72 Fed. Reg. 6184 (Feb. 9, 2007). In response to the NOPR and the notice of data availability, the DOE received over forty comments from stakeholders. See Rodgers Decl. ¶ 15.

On May 4, 2007, the DOE filed a Report on Status of Rulemaking Activity with the Court (the "May 2007 Report"). See Armand Decl., Ex. B. In the May 2007 Report, the DOE advised the Court that it was considering the comments to the NOPR and notice

of data availability, and that the final rule was on schedule for publication on or before September 30, 2007. Id. at 2.

After completing its initial analysis of the comments received in response to the NOPR and notice of date availability, the DOE determined that it wished to give further consideration to three issues, discussed *infra*, that were raised in the comments. See Rodgers Decl. ¶¶ 17-18, 23. By filing the Motion, the DOE seeks a modification of the Consent Decree that would permit a nine-month extension of the Existing Deadline, from September 30, 2007 until June 30, 2008. Id. ¶ 24. The DOE seeks this extension in order to permit it to issue a SNOPR seeking further comment on these three issues. Id.

On August 24, 2007, the Plaintiffs filed a response to the Motion and the Plaintiffs-Intervenors and Defendant-Intervenor filed oppositions to the Motion. On September 25, 2007, the Court entered an order that the September 30, 2007 deadline for the Defendants to issue the final furnace and boiler rule was to be stayed until seven calendar days after the date on which the Court enters an order resolving the Motion.

## II. DISCUSSION

### A) Standards for Modification of a Consent Decree

The Supreme Court has described a consent decree as an agreement between the parties to a case "after careful negotiation has produced agreement on [its] precise terms." Local

7

No. 93 v. City of Cleveland, 478 U.S. 501, 522 (1986) (internal quotations omitted).  Generally, the amendment of a consent decree is not favored.  While a federal court has the authority to modify judgments due to changed circumstances, modification by the court should be exercised with special caution when the judgment at issue is a consent decree by the parties. See, e.g., W.L. Gore & Associates, Inc. v. C.R. Bard, Inc., 977 F.2d 558, 561 (Fed. Cir. 1992) ("[w]hen litigation is ended by the deliberate choice of the parties, a movant's burden for modification of a consent order is particularly heavy . . . ."); see also Bellevue Manor Associates v. United States, 165 F.3d 1249, 1253 n.4 (9th Cir. 1999).

In this case, the DOE relies on Section V of the Consent Decree, which states that it may be modified "pursuant to a motion by any party, for good cause shown . . . ," see Consent Decree § V, ¶ 1, as well as Rule 60(b) of the Federal Rules of Civil Procedure, which authorizes the court to modify a final judgment where "it is no longer equitable that the judgment should have prospective application" or "any other reason justif[ies] relief from the operation of the judgment." See Fed. R. Civ. P. 60(b).

To justify modifying a consent decree under Rule 60(b), the party seeking modification bears the initial burden of establishing a significant change in factual or legal

circumstances, which cause the unmodified consent decree or its enforcement to be "substantially more onerous," "unworkable because of unforeseen obstacles," or "detrimental to the public interest." Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 383-84 (1992); see also Bldg & Constr. Trades Council of Phila. v. NLRB, 64 F.3d 880, 886 (3d Cir. 1995).  If the moving party demonstrates such a significant change in factual circumstances, the court must then consider "whether the proposed modification is suitably tailored to the changed circumstances." Rufo, 502 U.S. at 391.  When a party seeks to modify a consent decree based "upon events that actually were anticipated at the time it entered into a decree," the modification should be denied. Id. at 385.

B)  Defendant Has Not Demonstrated a Significant Change of Circumstances Warranting Modification of the Consent Decree

The DOE relies on three alleged changes in factual circumstances to support its Motion for Modification of the Consent Decree: (1) commenters' critique of the DOE's decision in the NOPR to exclude consideration of the potential impact of higher efficiency standards for gas-fired products on natural gas prices; (2) commenters' requests that the DOE consider a more stringent 90-percent annual fuel utilization efficiency ("AFUE") standard level for non-weatherized gas furnaces; and (3) commenters' concerns with a waiver procedure addressed in the

9

NOPR that would allow states to seek a waiver from federal preemption of state and local energy conservation standards. <u>See</u> Rodgers Decl. ¶¶ 17-18, 23.

1) Potential Impact of Higher Efficiency Standards for Gas-Fired Products on Natural Gas Prices

In the NOPR, the DOE declined to consider whether higher efficiency standards would result in lower natural gas prices in the future. <u>See</u> 71 Fed. Reg. at 59,208. The DOE explained that its review of a recent study revealed that "there is no conclusive evidence that furnace and boiler standards will affect overall natural gas prices" and that it was impossible "to estimate the possible impact of energy conservation standards on utility prices." <u>Id</u>.

Commenters criticized the DOE's decision not to consider the potential impact of higher efficiency standards for gas-fired products on natural gas prices, and challenged the DOE's determination that there is no reliable method for estimating the magnitude of the impact on average retail prices. <u>See</u> Rodgers Decl. ¶ 18b. Specifically, Plaintiff Natural Resources Defense Council, and non-party Dow Chemical Company, commented that the DOE could utilize a National Energy Modeling System ("NEMS") model to assess the potential impact. <u>Id</u>.; <u>see also</u> <u>id</u>., Ex. 9 (Comments of the Natural Res. Def. Council & The Dow Chem. Co., No. 132 at 7). In light of these comments, the DOE would like to revisit its decision, and has been preparing initial natural gas

10

price impact analyses, which have not yet been completed or published. See Rodgers Decl. ¶ 21.

The DOE argues that further consideration of these newly developed data and studies would require it to rely on assumptions and analyses that it had not previously made available for public comment. Id. While those new studies and data may prove helpful, the possibilities of obtaining new data and conducting new studies naturally arise in every rulemaking. Further, absent its newly developed data and studies, the DOE does not deny that it has a sufficient scientific and legal basis for issuing a final rule; rather, the DOE lacks the basis for the issuance of the "more effective and comprehensive final rule" that it wishes to issue. See Mem. of Law in Supp. of Defs.' Mot. for Modification of Consent Decree, at 18, fn. 5.

While the public has an interest in the development of the most effective and comprehensive energy conservation regulation possible, the public also has an interest in the speedy promulgation of a final rule. The EPCA established deadlines, which expired long ago. Additionally, the very purpose of the Consent Decree was to establish that despite the marginal benefit of continuing delays the DOE accepted that a decision must be reached by dates certain. The DOE had the past thirteen years to develop new data and conduct studies, and Plaintiffs are entitled to a final rule on the date agreed upon.

Since the DOE does not deny that it has a sufficient scientific and legal basis to issue a final furnace and boiler rule at this time, compliance with the unmodified Consent Decree would not harm the public interest.  Moreover, the DOE has not demonstrated that the unmodified Consent Decree is unworkable because of unforeseen obstacles or that compliance with it is substantially more onerous on account of this newly developed data and these studies.  Thus, for these reasons, the DOE has failed to meet its burden of showing that the commenters' critique of the DOE's decision not to consider the potential impact of higher efficiency standards for gas-fired products on natural gas prices is a changed circumstance sufficient to justify modification of the Consent Decree.

    2)  A 90-Percent AFUE Standard Level for Non-Weatherized
        Gas Furnaces

In the NOPR, the DOE evaluated a range of efficiency levels for residential furnaces and boilers. <u>See</u> Rodgers Decl. ¶ 9.  As a result, the DOE proposed a trial standard level, measured by percent of AFUE, of 80-percent for non-weatherized gas furnaces. <u>Id</u>.; 71 Fed. Reg. at 59,205.  The DOE specifically rejected a 90-percent AFUE level for non-weatherized gas furnaces, indicating that higher standards would not be "economically justified." Rodgers Decl. ¶ 10; 71 Fed. Reg. at 59,250-51.

Several commenters requested that the DOE consider a more stringent 90-percent AFUE standard level for non-weatherized gas

furnaces. Rodgers Decl. ¶ 18c. The comments asserted, *inter alia* that: "(i) the proposed 80-percent AFUE standard would provide little or no benefit for all consumers and would produce very modest energy savings, far smaller than those resulting from a 90-percent AFUE standard; and (ii) the net national impacts of a 90-percent AFUE standard would be positive." Id.

As a result of these comments, the DOE would like to consider whether the AFUE standard level for non-weatherized gas furnaces proposed in the NOPR, and commenters' requests to consider a more stringent 90-percent AFUE level, merit reexamination. Id. The DOE argues that the public was not put on notice that the 90-percent level was under consideration, and therefore did not have an adequate opportunity to comment on the 90-percent level. Id. ¶ 22.

It is clear, however, that the public was fully apprised of this issue. At the pre-motion conference, the Plaintiffs fully concurred. See Pre-Motion Conference, dated July 31, 2007 at 8 (Mr. Harak, attorney for Plaintiffs, the Texas Ratepayers' Organization to Save Energy and the Massachusetts Union of Public Housing Tenants, noted that "there have been three rounds of comments already on two of the three issues that [Mr. Armand] has discussed . . . [and] there were comments on the 90 percent standard"). The DOE acknowledges that it had already received public comments on this issue long before June of 2007.

See Rodgers Decl., Ex. 2, at V (consumer groups calling for 90-percent AFUE standard); Ex. 3 at 18 (NRDC calling for 90-percent AFUE standard); Ex. 10 (City of Boston calling for 90-percent standard).  The 90-percent standard was discussed numerous times in the rulemaking. See Decl. of Joseph M. Mattingly, dated Aug. 24, 2007 ("Mattingly Decl.") ¶¶ 19-30 (and exhibits cited therein).  The 90-percent AFUE standard has been exhaustively explored, and a third round of comments is not required.

In light of the extensive discussion and rejection of the 90-percent standard, it is clear to me that enforcement of the unmodified Consent Decree would not be substantially more onerous or unworkable due to unforeseen obstacles.  Defendants have failed to establish that publication of a final rule regarding the AFUE standard level on the Existing Deadline would harm the public interest.  For these reasons, the DOE has failed to meet its burden of showing that the comments requesting that it consider a more stringent 90-percent AFUE standard for non-weatherized gas furnaces is a "changed circumstance" sufficient to justify modification of the Consent Decree.

3)  State Waiver from Federal Preemption of State and
     Local Energy Conservation Standards

In response to comments in the ANOPR suggesting the establishment of regional standards to capture potential energy savings for Northern consumers, the DOE noted in the NOPR that the EPCA allows states to seek a waiver from federal preemption

of state and local energy conservation standards. See 71 Fed.
Reg. at 59,209-10. The DOE anticipated that the waiver procedure
could yield significant energy savings outside of the rulemaking
if states successfully obtained waivers of the federal standard
and imposed more stringent energy conservation standards. Rodgers
Decl. ¶ 18a.

Commenters expressed concerns regarding: "(i) the difficulty
and impracticality of states seeking waivers; (ii) the
possibility that the DOE will deny many of the waiver petitions;
and (iii) the potential burden on industry if states were granted
waivers that produced a 'patchwork' of standards." Id.

The DOE argues that it "did not anticipate that the
aforementioned comments would cause [it] to consider rethinking
the NOPR's emphasis on waivers . . . ." See Mem. of Law in Supp.
of Defs.' Mot. for Modification of Consent Decree, at 11. When
the Consent Decree was signed in November 2006, the DOE knew that
comments would soon be filed[3] and that the Agency would have to
consider whether the rule it proposed on October 6, 2006 should
be revised accordingly. Rulemakings almost always include
challenges to important assumptions as well as legal and
analytical concepts. The fact that many comments disagree with
the DOE's preliminary conclusions in the NOPR or result in

---

[3] The deadline for filing comments was January 15, 2007. 71 Fed. Reg.
at 59,204.

modification of the proposed regulation is not a sufficient basis for extending the deadline.

The DOE further alleges that it discussed the waiver procedure for the first time in the NOPR.  Rodgers Decl. ¶ 20. It argues that "any reconsideration of the emphasis placed on the waiver process and its potential impact on energy standards should be published in order to solicit comments from all interested parties." <u>See</u> Mem. of Law in Supp. of Defs.' Mot. for Modification of Consent Decree, at 10.  The DOE does not deny, however, that this issue has been a lively subject of debate for years.  It acknowledges that it had already received public comments on this issue long before June of 2007.  Rodgers Decl., Exs. 1-3.  Moreover, a decision to withdraw an existing proposal, such as the state waiver procedure, in light of negative comment is within the logical span of the current NOPR.  If comments convince the DOE that its proposal is flawed, the Agency should withdraw the proposal.  A third round of public comment is not necessary.

The fact that comments have caused the DOE to reconsider the NOPR's emphasis on state waivers is not an unforeseen obstacle. Furthermore, the DOE has not demonstrated that the comments it received regarding the state waiver procedure make compliance with the unmodified Consent Decree substantially more onerous or detrimental to the public interest.  Thus, for these reasons, the

DOE has failed to meet its burden of showing that the commenters' critique of a state waiver procedure is a changed circumstance sufficient to justify modification. Since the DOE has not satisfied its initial burden, this Court need not address whether the DOE's proposed modification is suitably tailored to the changed circumstances.

   C) <u>Defendant Has Not Demonstrated Equitable Factors Which Warrant Modification of the Consent Decree</u>

Courts are authorized to relieve a party from the effects of a consent decree if "it is no longer equitable that the judgment should have prospective application." <u>Kozlowski v. Coughlin</u>, 871 F.2d 241, 246 (2d Cir. 1989) (internal quotations omitted). The DOE places a considerable amount of emphasis on <u>Cronin v. Browner</u>, 90 F. Supp. 2d 364 (S.D.N.Y. 2000), which involved a motion filed by the EPA to modify a consent decree. <u>See</u> Mem. of Law in Supp. of Defs.' Mot. for Modification of Consent Decree at 16-18. In <u>Cronin</u>, the court rejected the EPA's changed circumstances as anticipated and/or insufficient to render the decree onerous, but found that enforcing the then-existing deadlines of the decree would harm the public interest because the EPA could not promulgate a scientifically and legally defensible regulation by the deadline. <u>Id</u>. at 371, 374. By contrast, here the DOE does not deny that it has a sufficient scientific and legal basis for issuing a final rule at this time. <u>See</u> Mem. of Law in Supp. of Defs.' Mot. for Modification of

Consent Decree at 18. Rather, here the DOE merely argues that such a rule would not be the "most comprehensive and effective rule possible . . . ." Id. The issuance of a final rule at this point, regardless of whether it was the "most comprehensive and effective rule possible," would not harm the public interest.

The DOE additionally argues that, even if these circumstances were anticipated, it nonetheless satisfies the standard articulated in Inmates of Suffolk County Jail v. Rufo because it agreed to the Consent Decree in good faith and has made a reasonable effort to comply with its terms.[4] However, as articulated above, the delays due to public comments were foreseeable. Thus, the Court is not convinced that the DOE has satisfied its "heavy burden" of demonstrating that it agreed to the Consent Decree in good faith and made a reasonable effort to comply with its terms.

## III. CONCLUSION

The DOE has not satisfied its burden of showing a significant change in factual or legal circumstances which

---

[4] Defendants cite Rufo, which states that where "it is clear that a party anticipated changing conditions," that party has a heavier burden to demonstrate that "it agreed to the decree in good faith, made a reasonable effort to comply with the decree, and should be relieved of the undertaking under Rule 60(b)." 502 U.S. at 385. Although the Rufo court suggests that good faith compliance with the decree can be one avenue for overcoming the general requirements for modification of a consent decree, the courts clearly did not find sufficient good faith by the movant in that case. Id. Ultimately, the district court on remand refused to modify the consent decree. Inmates of Suffolk County Jail v. Rufo, 148 F.R.D. 14, 25 (D. Mass. 1993). In fact, Defendants fail to cite any case from this Circuit or any other circuit which has modified a consent decree on that basis.

warrants modification of the Consent Decree; nor do equitable factors warrant modification of the Consent Decree. The public has been fully apprised of all issues and has been given ample opportunity for comment. Accordingly, the DOE's Motion to Modify the Consent Decree is DENIED.

Defendants have seven calendar days to finalize a final rule establishing amended energy conservation standards for residential furnaces and boilers.

SO ORDERED.

DATED:    New York, New York
          October 30 , 2007

John E. Sprizzo
United States District Judge

19

**APPEARANCES**

NATIONAL CONSUMER LAW CENTER
Counsel for Plaintiffs Massachusetts Union of Public Housing
Tenants and Texas Ratepayers' Organization to Save Energy
NCLC
77 Summer Street, 10th Floor
Boston, MA 02110

    CHARLES HARAK, ESQ.

        Of Counsel

ANDREW M. CUOMO
ATTORNEY GENERAL STATE OF NEW YORK
Counsel for Plaintiff State of New York
New York State Department of Law
120 Broadway
New York, NY 10271

    JACOB HOLLINGER
    Assistant Attorney General

        Of Counsel

THE PEOPLE OF THE STATE OF CALIFORNIA, EX REL.
BILL LOCKYER, ATTORNEY GENERAL
Counsel for Plaintiff State of California
California Attorney General's Office
1515 Clay Street, 20th Floor
P.O. Box 70550
Oakland, California 94612-0550

    JANILL L. RICHARDS
    Assistant Attorney General

        Of Counsel

CALIFORNIA ENERGY COMMISSION
Attorneys for Plaintiff California Energy Commission
California Energy Commission
1516 Ninth Street, MS 14
Sacramento, California 95814-5512

JONATHAN BLEES, ESQ.

Of Counsel

RICHARD BLUMENTHAL
ATTORNEY GENERAL STATE OF CONNECTICUT
Counsel for Plaintiff State of Connecticut
55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120

JOSE SUAREZ
Assistant Attorney General

Of Counsel

LISA MADIGAN
ATTORNEY GENERAL STATE OF ILLINOIS
Counsel for the Plaintiff State of Illinois
188 West Randolph Street, Suite 2001
Chicago, Illinois 60601

MATTHEW DUNN
Assistant Attorney General

Of Counsel

THOMAS J. MILLER
ATTORNEY GENERAL STATE OF IOWA
Counsel for Plaintiff State of Iowa
Lucas State Office Bldg.
321 E. 12th Street, Room 018
Des Moines, IA 50319

DAVID R. SHERIDAN
Assistant Attorney General

Of Counsel

G. STEVEN ROWE
ATTORNEY GENERAL STATE OF MAINE
Counsel for Plaintiff State of Maine
Department of the Attorney General
State House Station #6
Augusta, ME 04333-0006

       GERALD D. REID
       Assistant Attorney General

       Of Counsel

MARTHA COAKLEY
ATTORNEY GENERAL COMMONWEALTH OF MASSACHUSETTS
Counsel for Plaintiff State of Massachusetts
1 Ashburton Place, 18th Floor
Boston, Massachusetts 02108

       FREDERICK D. AUGENSTERN
       Assistant Attorney General

       Of Counsel

KELLY A. AYOTTE
ATTORNEY GENERAL STATE OF NEW HAMPSHIRE
Counsel for Plaintiff State of New Hampshire
Office of Attorney General
33 Capitol Street
Concord, NH 03301-6397

       MAUREEN D. SMITH
       Assistant Attorney General

       Of Counsel

ANNE MILGRAM
ATTORNEY GENERAL STATE OF NEW JERSEY
Counsel for Plaintiff State of New Jersey
Richard J. Hughes Justice Complex
25 Market Street
P.O. Box 093
Trenton, New Jersey 08625-0093

       HOWARD GEDULDIG
       Assistant Attorney General

       Of Counsel

22

GARY KING
ATTORNEY GENERAL OF NEW MEXICO
Counsel for Plaintiff State of New Mexico
New Mexico Attorney General's Office
P. O. Drawer 1508
Santa Fe, NM 87504-1508

    STUART M. BLUESTONE
    Assistant Attorney General

       Of Counsel

ROY COOPER
ATTORNEY GENERAL STATE OF NORTH CAROLINA
Counsel for Plaintiff State of North Carolina
North Carolina Department of Justice
P.O. Box 629
[114 West Edenton Street, Room 306A]
Raleigh, NC 27602

    JAMES C. GULICK
    Assistant Attorney General

       Of Counsel

COMMONWEALTH OF PENNSYLVANIA,
DEPARTMENT OF ENVIRONMENTAL PROTECTION
Counsel for Plaintiff Pennsylvania
Department of Environmental Protection
Rachel Carson State Office Building
P.O. Box 8464
Harrisburg, Pennsylvania 17105

    ROBERT A. REILEY, ESQ.

       Of Counsel

PATRICK C. LYNCH
ATTORNEY GENERAL STATE OF RHODE ISLAND
Counsel for Plaintiff State of Rhode Island
Department of the Attorney General
150 South Main Street
Providence, Rhode Island 02903

    TRICIA K. JEDELE
    Assistant Attorney General

       Of Counsel

WILLIAM H. SORRELL
ATTORNEY GENERAL STATE OF VERMONT
Counsel for Plaintiff State of Vermont
Office of the Attorney General
109 State Street
Montpelier, Vermont 05609-1001

        KEVIN O. LESKE
        Assistant Attorney General

        Of Counsel

J. B. VAN HOLLEN
ATTORNEY GENERAL STATE OF WISCONSIN
Counsel for Plaintiff State of Wisconsin
Wisconsin Department of Justice
17 West Main Street
Madison, Wisconsin 53707-7857

        THOMAS J. DAWSON
        Assistant Attorney General

        Of Counsel

MICHAEL A. CARDOZO
CORPORATION COUNSEL OF THE CITY OF NEW YORK
Counsel for Plaintiff City of New York
New York City Law Department
100 Church Street
New York, NY 10007

        SCOTT PASTERNACK
        Assistant Corporation Counsel

        Of Counsel

NATURAL RESOURCES DEFENSE COUNCIL, INC.
Counsel for Plaintiff Natural Resources Defense Council, Inc.
40 West 20th Street
New York, New York 10011

        NANCY MARKS, ESQ.

        Of Counsel

24

KIRKLAND & ELLIS LLP
Counsel for Plaintiff-Intervenor Gas Appliance
Manufacturers Association
Suite 600, 2107 Wilson Boulevard
Arlington, VA 22201

    JEFFREY BOSSERT CLARK, ESQ.

        Of Counsel

MICHAEL J. GARCIA
UNITED STATES ATTORNEY FOR THE
SOUTHERN DISTRICT OF NEW YORK
Counsel for Defendants Samuel W. Bodman and
the United States Department of Energy
86 Chambers Street
New York, New York 10007

     PIERRE G. ARMAND
     Assistant United States Attorney

        Of Counsel

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
Counsel for Defendant-Intervenor
Association of Home Appliance Manufacturers
666 Third Avenue
New York, NY 10017

    DOMINIC PICCA, ESQ.

        Of Counsel